UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RAY CROSBY,

    Petitioner,

v.     Case No. 5:02-cv-129-Oc-10GRJ

JAMES V. CROSBY, JR.,[1] et al.,

    Respondents.

_____

## ORDER DENYING THE PETITION

Petitioner, who is proceeding pro se, initiated this case by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1.)

## Conviction and Sentence

Petitioner challenges a 2000, Lake County, state court conviction for one count possession of cocaine with intent to sell or deliver, and one count possession of marijuana with intent to sell or deliver, for which Petitioner is currently serving a total sentence of ten years.

## Timeliness of Petition

Respondents concede that the Petition was timely filed within the one-year limitation period under 28 U.S.C. § 2244(d)(1).[2]

---

[1] Pursuant to Rule 25(d) of the Federal Rule of Civil Procedure, James V. Crosby, Jr., is hereby substituted for Michael Moore as the Secretary of the Florida Department of Corrections.

[2] Respondents' Response to Petition (Doc. 7) at 5.

## Claims of Petition

In the Petition, the Petitioner claims the following grounds for relief:

(1) that his conviction was obtained on a defective indictment because the record does not support the charges; and,

(2) that counsel was ineffective for

    (a) failing to file a motion to suppress out-of-court statements made by the witnesses and other evidence used at trial against the Petitioner;

    (b) failing to file a motion challenging the propriety of Petitioner's arrest;

    (c) failing to investigate, depose, and call exculpatory witnesses Kelly Porn, an unknown friend of Ms. Porn, and Petitioner's brothers Tommy and Tyrone;

    (d) failing to argue that Petitioner did not live in Ms. Squibb's home at the time the drugs were discovered;

    (e) withholding documents containing potentially exculpatory evidence as to the previous drug convictions of Petitioner's brothers Tommy and Tyrone; and,

    (f) failing to disclose a conflict of interest.

## Exhaustion/Procedural Bars

There are two prerequisites to federal habeas review: (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated," and (2) "the applicant must have

presented his claims in state court in a procedurally correct manner."[3]  This means that "a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."[4] Petitioners' pro se status does not alone amount to good cause.[5]

A petition for writ of habeas corpus should not be entertained unless the Petitioner has first exhausted his state remedies.[6]  The courts of Florida must be given the opportunity to consider the Petitioner's legal theory of a federal constitutional deficiency and the factual basis for that theory.[7]  Concerns of comity require that exhaustion cannot be satisfied by the mere statement of a federal claim in state court.[8]  The Petitioner must afford the State a full and fair opportunity to address and resolve the claim on the merits.[9]  A full and fair opportunity involves the proper presentation,[10] and substance of, the federal constitutional claim.[11]

---

[3] Upshaw v. Singletary, 70 F.3d 576, 578-579 (11th Cir. 1995) (citations omitted).

[4] Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir.) cert. denied, 513 U.S. 1061 (1994) (citing Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977)).

[5] See Harmon v. Barton, 894 F.2d 1268, 1275 (11th Cir.) cert. denied, 498 U.S. 832 (1990).

[6] Castille v. Peoples, 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, reh'g denied, 490 U.S. 1076 (1989); Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198 (1982).

[7] Picard v. Connor, 404 U.S. 270, 277, 92 S.Ct. 509, 513 (1971).

[8] Footman v. Singletary, 978 F.2d 1207, 1210-11 (11th Cir. 1992).

[9] Id.

[10] Castille at 351.

[11] Watson v. Dugger, 945 F.2d 367, 371-372 (11th Cir. 1991).

Generally, a federal habeas petition should be dismissed if the petitioner has failed to exhaust state remedies. Additionally, a petitioner must avoid a procedural default by non-compliance with State substantive or procedural requirements.[12]

Respondents urge this Court to find that ground two, containing all of Petitioner's ineffective assistance of counsel claims, is procedurally barred for reasons of lack of exhaustion and procedural default.

A review of the record in state court shows that Petitioner failed to raise grounds 2(a), 2(b), and 2(e) in state court. Therefore, grounds 2(a), 2(b) and 2(e) are not exhausted.[13] In addition, Petitioner's first Rule 3.850 motion raised other ineffective assistance of counsel claims that were denied on the merits.[14] Therefore, Petitioner is now barred from raising new ineffective assistance of counsel claims in a subsequent Rule 3.850 motion.[15] Accordingly, Petitioner is now barred from raising these claims on federal habeas review.

Petitioners' grounds 2(d) and 2(f) were raised in Petitioner's first Rule 3.850 motion in state court. Petitioners' first Rule 3.850 motion was denied on the merits on November 14, 2001, and a notice of appeal was received by the trial court on December 26, 2001. Petitioner subsequently filed a motion to voluntarily dismiss the

---

[12] Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 2553-54, *reh'g denied*, 501 U.S. 1277 (1991).

[13] "A habeas Petitioner may not present instances of ineffective assistance of counsel in his federal habeas petition that the state court has not evaluated previously." Footman v. Singletary, 978 F.2d at 1211.

[14] Respondents' Appendix (Doc. 8) (hereinafter App.) at Ex. C-96.

[15] See Tafero v. State, 561 So.2d 557 (Fla. 1990) (additional claims of ineffective assistance of counsel cannot be raised in a successive motion for post conviction relief where ineffectiveness was raised and addressed in the first motion).

appeal and the appeal was dismissed on March 6, 2002. Petitioner did not pursue the matter further. Therefore, it appears that Petitioner failed to exhaust his state court remedies with regard to the issues raised in his first Rule 3.850 motion.[16] Moreover, because the time for pursuing those remedies has past,[17] Petitioner is barred from raising those claims on federal habeas review.[18]

Petitioner raised ground 2(c) in his second Rule 3.850 motion. Petitioners' second Rule 3.850 motion was summarily denied without a written opinion. However, Petitioner's second Rule 3.850 motion was clearly successive under state law.[19] Therefore, the federal Court may presume that had the state court issued a written opinion, the state court would have applied the state procedural rule and dismissed the motion as successive, rather than reach a ruling on the merits.[20] Because Petitioner attempted to raise this issue in a procedurally incorrect manner in state court, Petitioner is now barred from pursuing this claim on federal habeas review.

---

[16] See Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979) ("In Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal from its denial."); see also Farrell v. Lane, 939 F.2d 409, 411 (7th Cir. 1991) (a claim that is raised and denied pursuant to a motion for post conviction relief, but is not appealed, is waived for purposes of federal habeas review); Smith v. Jones, 923 F.2d 588 (8th Cir. 1991) (the failure to appeal a claim denied in a motion for post conviction relief constitutes a procedural default).

[17] See Fla.R.Crim.P. 3.850(g).

[18] If a Petitioner fails to exhaust his federal constitutional claim, the federal courts may find the unexhausted claim to be procedurally defaulted "if it is clear from state law that any future attempts at exhaustion would be futile." Bailey v. Nagle, 172 F.3d 1299, 1305 (11th Cir. 1999) (per curiam). In addition, if the Court finds that the unexhausted claim(s) would now be procedurally defaulted, the "exhaustion requirement and procedural default principles combine to mandate dismissal" of those claims. Id (citing Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir. 1998).

[19] See Fla.R.Crim.P. 3.850 (f).

[20] See Tower v. Phillips, 7 F.3d 206, 211 (11th Cir. 1993).

For these reasons, the Court finds that each of the claims raised in Petitioner's ground 2 are barred on federal habeas review unless Petitioner can make a showing of cause and actual prejudice for his procedural defaults.[21]

### Cause and Prejudice

In order to gain review of an otherwise procedurally defaulted claim, Petitioner must demonstrate both cause excusing the default and actual prejudice from the bar.[22] To show cause, Petitioner must establish that the default resulted "from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct."[23] To show prejudice, the petitioner "must show that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'"[24] In this instance, Petitioner argues that the Court should find cause and prejudice for his procedural default for three reasons: (1) petitioner was proceeding pro se; (2) petitioners' Rule 3.850 motions were barebone pleadings because Petitioner was without the benefit of the trial transcripts; and, (3) Petitioner was unable to think clearly at the time he filed his motions for post conviction relief because he was on psychotropic

---

[21] See Parker v. Sec'y for the Dept. of Corr., 331 F.3d 764, 770 (11th Cir. 2003), cert. denied, 540 U.S. 1222 (2004); Bailey v. Nagle, 172 F.3d at 1302.

[22] Hill v. Jones, 81 F.3d 1015, 1022-23 (11th Cir. 1996).

[23] Wright v. Hopper, 169 F.3d 695, 706 (11th Cir.), cert. denied, 528 U.S. 934 (1999) (citing McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir 1992)).

[24] Id.

medications during his first six months of incarceration.

However, as previously noted, a petitioner's pro se status alone, is insufficient to establish cause and prejudice for a procedural default.[25] In addition, a review of both of Petitioner's Rule 3.850 motions show that Petitioner's allegations were well reasoned and well stated and that Petitioner did in fact cite to the trial transcripts in those documents.[26] Thus, this claim is clearly refuted by the record. Finally, assuming that Petitioner was actually under the influence of psychotropic medications during the first six months of his incarceration, the Court fails to see how those medications influenced or distorted Petitioner's thoughts at the time his post conviction motions were filed.[27] Accordingly, Petitioner has failed to establish cause and actual prejudice for procedurally defaulting his claims in state court.

## Fundamental Miscarriage of Justice

Despite the fact that Petitioner has failed to make a showing of cause and actual prejudice for his procedural default, "a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice,

---

[25] See note 5, infra.

[26] See App. at Ex. C74-95, C127-133.

[27] After being found guilty, Petitioner remained on bond pursuant to probationary conditions. See App., Ex. B, the trial transcripts (hereinafter TT), at 154. When Petitioner failed to take a drug test pursuant to his probationary conditions, his bond was revoked. App. at Ex. A73-76. Therefore, Petitioner was incarcerated on or about July 25, 2000, the date on which he was arrested. App. at Ex. A103-106. Petitioner was sentenced on August 2, 2000 and transferred to the Florida Department of Corrections (DOC). App. at Ex. A108-111 Petitioner's first motion for post conviction relief was executed on September 13, 2001. App. at Ex. C-93. According to Petitioner's own statements, he stopped taking the psychotropic medications in late January 2001 or late February 2001, depending on whether Petitioner first started taking the medications at the time his bond was revoked or at the time he was transferred to the custody of the DOC. Thus, it was nearly seven or eight months later that Petitioner filed his first motion for post conviction relief and approximately one-year later that Petitioner executed his second Rule 3.850 motion.

to correct a fundamental miscarriage of justice."[28]  However, "[t]he fundamental miscarriage of justice exception is only available in extraordinary cases"[29] such as "where a constitutional violation has resulted in the conviction of someone who is actually innocent."[30]  "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense."[31]  Moreover, to be credible, Petitioner's actual innocence claim "must be based on reliable evidence not presented at trial."[32]

In this case, Plaintiff argues that the affidavits of Alane K. Squibb,[33] the state's main witness against him, clearly show that he is actually innocent of the crimes for which he was convicted.  Therefore, Petitioner alleges that the Court should find that a fundamental miscarriage of justice will occur if the merits of his ineffective assistance of counsel claims are not addressed.

After a thorough review of Ms. Squibb's affidavits, the Court is not convinced that a fundamental miscarriage of justice will occur if Plaintiff's ineffective assistance of counsel claims are not heard on the merits.  Ms. Squibb is not refuting or

---

[28] Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam), cert. denied, 538 U.S. 947 (2003) (citing Murray v. Carrier, 477 U.S. 478, 495-95, 106 S.Ct. 2639, 2679 (1986)).

[29] Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001), cert. denied, 535 U.S. 926 (2002) (citations omitted); see also McClesky v. Zant, 499 U.S. 467, 111 S.Ct. 1454, 1470 (1991).

[30] Murray v. Carrier, supra.

[31] Fortenberry v. Haley, 297 F.3d at 1222 (quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851, 867 (1995)).

[32] Id (quoting Calderon v. Thompson, 523 U.S. 538, 559, 118 S.Ct. 1489 (1998)).

[33] See Petition (Doc. 1) at Ex. A, Affidavit of Alane K. Squibb dated August 17, 2001; see also Petitioner's Answer to Respondents' Response (Doc. 10) at Ex. A., Affidavit of Alane K. Squibb dated July 25, 2002.

changing her trial testimony, she is merely clarifying that testimony. Specifically, Ms. Squibb clarifies that the Petitioner was not "permanently" living with her at the time the drugs were found in her home. Such a statement does not change Ms. Squibb's other testimony that Petitioner had access to her home at that time or that he shared her bedroom on occasion and used the side of the bed on which the drugs were found. Therefore, the Court is of the opinion that Ms. Squibb's affidavits do not show that it is more likely than not that no reasonable juror would have convicted Petitioner of the underlying offense had this evidence been produced at trial.[34]

### Evidentiary Hearing

Upon a review of the record, the Petitioner is not entitled to an evidentiary hearing.[35] The pertinent facts of the case are fully developed in the record before the Court.[36] Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development,"[37] no additional evidentiary proceedings are required.[38]

### Merits of Claims

After the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the role of a federal habeas court when reviewing a state prisoner's application pursuant

---

[34] For a more complete recitation of the trial testimony, see pages 11-16 of this Order.

[35] Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999).

[36] Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992).

[37] Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 124 S.Ct. 2104 (2004).

[38] High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) cert. denied, 121 S.Ct. 1237 (2001) (citing McClesky v. Zant, 499 U.S. at 494).

to 28 U.S.C. § 2254 is limited.[39]  Specifically, a federal court must give deference to state court adjudications unless the state court's adjudication of the claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[40] Moreover, each clause, "contrary to" and "unreasonable application," provides a separate basis for review.[41]

Furthermore, under § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[42]  The AEDPA also directs that the factual findings of the state court are afforded a presumption of correctness that can only be rebutted by clear and convincing evidence.[43]  This presumption of correctness applies to factual determinations made by both the state trial and appellate courts.[44]

Finally, for a state court's resolution of a claim to be an adjudication on the merits so that the state court's determination will be entitled to deference for

---

[39] See Williams v. Taylor, 529 U.S. 362, 403-404, 120 S.Ct. 1495, 1518-19 (2000).

[40] See 28 U.S.C. § 2254(d)(1).

[41] Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

[42] See also Van Poyck v. Florida Dept. Of Corr., 290 F.3d 1318, 1321 (11th Cir. 2002) (per curiam) ("[u]nless a state court decision is directly contrary to Supreme Court case law, we review state court findings of fact and conclusions of law for reasonableness").

[43] See 28 U.S.C. § 2254(e)(1).

[44] Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003).

purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.[45]

### Ground One

In ground one, Petitioner alleges that his conviction was obtained by a defective information. Specifically, Petitioner argues that the record fails to support a finding that he had physical possession of the drugs, constructive possession of the drugs, or an intent to sell or deliver drugs. Because of the basis for Petitioner's claim in ground one, in their response to the Petition, the Respondents have construed Petitioner's ground one as a challenge to the insufficiency of the evidence. Petitioner concedes that the Respondents have appropriately construed this ground,[46] and the court will address this claim accordingly.

When reviewing a claim of the sufficiency of the evidence on federal habeas review, the District Court is required to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[47] "When the record reflects facts that support conflicting inferences, there is a presumption that the jury resolved those conflicts in favor of the prosecution and against the defendant. In

---

[45] Wright v. Secretary for the Dept. of Corrections, 278 F.3d 1245, 1255 (11th Cir. 2002) cert. denied, 538 U.S. 906 (2003); see also Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004).

[46] Petitioner's Answer to Response by Respondents (Doc. 10 ) at 1.

[47] Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979).

other words, federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and in weighing the evidence."[48]

Petitioner was found guilty of the actual or constructive possession of cocaine with the intent to sell or deliver under Florida Statutes 893.03(2)(a)4 and 893.13(1)(a)1 and with the actual or constructive possession of marijuana with the intent to sell or deliver under Florida Statutes 893.03(1)(c)7 and 893.13(1)(a)2.[49] It is undisputed that the State could not prove actual possession and so its theory at trial was that Petitioner was in constructive possession of the drugs at the time they were seized from Ms. Squibb's home.

In order to establish constructive possession in Florida, the State must show that the defendant (1) knew the drugs were present on or about the premises, (2) that the defendant had dominion or control over the drugs, and (3) that the Defendant knew of the illicit nature of the drugs.[50] Moreover, where possession is non-exclusive, knowledge of the contraband must be established by independent proof, consisting of "incriminating statements and circumstances, other than the mere location of the substance, from which a jury might lawfully infer knowledge by

---

[48] Johnson v. Alabama, 256 F.3d 1156, 1172 (11th Cir. 2001).

[49] The drugs were accidentally found by Ms. Squibb's then 10 year old daughter, Alysa. TT at 15. After her discovery, Alysa called her Aunt, Kelly Porn, and told her what she had found. TT at 16. Ms. Porn was highly concerned by the discovery and telephoned a respected friend for advice. TT at 18, 19. It is unclear who actually called the police and reported the discovery, but at trial, Ms. Squibb seemed to believe it was either her sister, Miss Porn, or her sister's friend. TT at 26.

[50] See Brown v. State, 428 So.2d 250 (Fla. 1983); see also Greene v. State, 625 So.2d 1293, 1295 (Fla. 5th DCA 1993).

12

the accused of the presence of the contraband on the premises."[51]

At trial, the testimony of the state witnesses was that Ms. Squibb owned the home in which the drugs were found,[52] that she owned the filing cabinet in which the drugs were kept,[53] and that most, if not all of the discovered drug paraphernalia, were items from her home. TT at 29-33. The testimony of the witnesses was also that Petitioner was Ms. Squibb's boyfriend,[54] that he either lived in or had access to the home at or about the time the drugs were found,[55] and that Petitioner and Ms. Squibb shared the bedroom. TT at 21. Further, the testimony was that the drugs were found on or around Petitioner's side of the bed,[56] and that a fingerprint found on the shoe box containing the drugs and drug paraphernalia was Petitioner's. TT at 80-87. Finally, Ms. Squibb testified that the drugs were not hers,[57] that she had no idea the drugs were in the house,[58] and that she had never seen them before. TT at 26.

On cross examination, defense counsel presented testimony that contradicted

---

[51] Ball v. State, 758 So.2d 1239, 1241 (Fla. 5th DCA 2000) (quoting Murphy v. State, 511 So.2d 397, 399) (Fla. 4th DCA 1987).

[52] TT at 34.

[53] TT at 22.

[54] TT at 21.

[55] TT at 19, 21.

[56] TT at 21-22.

[57] TT at 34.

[58] TT at 26.

much of the State's case.  For instance, defense counsel reinforced the fact that the home and all the belongings associated with the drugs were Ms. Squibb's.  TT at 34-37, 57.  In addition, defense counsel made it quite clear that Ms. Squibb and Petitioner were not the only persons who had access to the house.[59]  TT at 34.  Further, defense counsel reinforced testimony that the police detectives who investigated the incident did not have a search warrant when they first approached Ms. Squibb about the drugs allegedly seen in her home.  TT at 57-59.  Defense counsel also reinforced testimony that the lead detective was a long time acquaintance of Ms. Squibb's and allowed her to enter and search the bedroom privately after telling her of the allegations.  TT at 43-45, 59-60.  Thus, defense counsel made it clear that Ms. Squibb was alone in the bedroom for two or three minutes before the room was searched by the police.  TT at 45.

Additionally, defense counsel questioned the police's failure to consider Ms. Squibb as a defendant and to obtain Ms. Squibb's fingerprints.  TT at 57-58, 60-61.  This was especially important because there was a fingerprint, other than Petitioner's, found on the shoe box in which much of the drug paraphernalia was contained.  TT at 88-90.  Defense counsel clearly made it appear as if Ms. Squibb was the actual perpetrator of the crime and that she was overlooked or received special treatment by the police because of her relationship with the lead detective.

---

[59] Ms. Squibb's sister had a key to the house as did Petitioner's brother Tyrone.  TT at 30, 34.  Additionally, another one of Petitioner's brothers was occasionally given unfettered access to the house when neither Ms. Squibb nor the Petitioner were present.  Id.

As to Petitioner's argument that the State failed to prove that he intended to sell or deliver the drugs, the State presented only the testimony of Detective Provencher. During that testimony, Detective Provencher stated that he was involved in hundreds of drug arrests during his career in law enforcement. TT at 41. Furthermore, Detective Provencher testified that he had participated in many controlled drug buys, posing as both the dealer and the buyer. TT at 41-42. Detective Provencher testified that based on his experience, he was very familiar with the supplies necessary to cut, package, and distribute drugs. TT at 42. With regard to the drug paraphernalia found in Ms. Squibb's home, Detective Provencher stated that a bowl, a spoon, a knife, two playing cards, a straw, and small plastic baggies were found. TT at 52, 96. Detective Provencher stated that from these articles, he believed the drugs were being cut and packaged for distribution. TT at 96-97. Detective Provencher explained that the bowl and the knife were used to cut up big blocks of drugs into smaller, sellable portions. TT at 97. The cards were then used to divide the drugs and the straw and spoon were used to scoop the drugs into the small Ziploc baggies. TT at 96-97. Finally, Detective Provencher testified that he did not find any drug paraphernalia in the bedroom that would tend to show that the drugs were being used for personal or recreational use. TT at 94-95.

Based on the testimony at trial, it is clear that this case was resolved by the jury based on the credibility of the witnesses and that any issues of credibility were

resolved in the state's favor.[60]  Additionally, in viewing the evidence in the light most favorable to the prosecution, the Court believes that there is enough evidence for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt.  Accordingly, the Court will not disturb the factual determinations made by the jury and ground one is denied.

## Conclusion

As set forth in this Order, ground one is due to be denied. Further, all of Plaintiff's ineffective assistance of counsel claims under ground 2 are either not exhausted, procedurally defaulted, or both.  Because Plaintiff has failed to make a showing of cause and prejudice for the default, or that a fundamental miscarriage of justice will occur if those issues are not addressed on the merits, ground two is also denied.  Therefore, the Petition is **DENIED** with prejudice.  The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** at Ocala, Florida, this 4th day of May 2005.

_____
UNITED STATES DISTRICT JUDGE

c:  Ray Crosby
    Counsel of Record

---

[60] In finding petitioner guilty, the jury clearly believed Ms. Squibb when she testified that the drugs were not hers, that she did not know they were in the house, and that she had never seen them before. Moreover, the jury clearly gave deference to the testimony and credibility of Detective Provencher with regard to the intent element of the crime.